IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALFRED GALAZ and RAUL GALAZ, | § | CV NO. 5:14-CV-967 |
| | § | |
| Appellants, | § | |
| | § | |
| v. | § | |
| | § | |
| LISA ANN KATONA f/k/a LISA ANN | § | |
| GALAZ, | § | |
| | § | |
| Appellee. | § | |
| _____ | § | |

MEMORANDUM OPINION AND ORDER AFFIRMING THE BANKRUPTCY
COURT'S ORDER GRANTING KATONA'S MOTION FOR SUMMARY
JUDGMENT AND ENJOINING ALFRED GALAZ FROM PURSUING
<u>FUTURE CLAIMS AGAINST KATONA</u>

Before the Court is an appeal from the bankruptcy court's order, by

Presiding Judge Ronald B. King, brought by Appellants Alfred Galaz ("Alfred")

and Raul Galaz ("Raul") granting a Motion for Summary Judgment filed by

Appellee Lisa Ann Katona f/k/a Lisa Ann Galaz ("Katona") and enjoining Alfred

from pursuing any future claims against Katona.  For the reasons that follow, the

Court **AFFIRMS** the bankruptcy court's order.

<u>BACKGROUND</u>

The instant case arises out of the ownership interest in Worldwide

Subsidy Group ("WSG"), a company that collects royalties owed to film and

1

television distributors.  (Dkt. # 3 at 6; Dkt. # 6 at 2.)  WSG was formed as a California entity by Raul and his legal assistant, Marian Oshita ("Oshita").  (Dkt. # 3 at 6.)  When WSG was formed, Raul owed a 75% interest and Oshita owned a 25% interest.  (Id.)  At the time WSG was formed, Raul and Katona were married.  (See Dkt. # 3 at 6; Dkt. # 6 at 2–3.)

In May 2002, Raul and Katona divorced, at which time Katona inherited half of Raul's 75% interest in WSG.  (Dkt. # 3 at 6; Dkt. # 6 at 2–3.)  Shortly thereafter, Raul sold his remaining interest—a 37.5% ownership interest—to Oshita for $50,000, paid as an offset against monies WSG allegedly owed to Oshita for unreimbursed expenses.  (Dkt. # 3 at 6.)  The transaction left Oshita and Katona as co-owners of WSG.   (See id.)

Sometime thereafter, Katona learned that Oshita's claim for the allegedly unreimbursed monies was fraudulent, and Katona filed suit against Oshita in California state court (the "California Action").  Ultimately, the court awarded Katona the 37.5% interest that Raul had transferred to Oshita, as well as $18,750 in damages against Oshita, which Oshita never paid (the "Unpaid Money Judgment").  (Id. at 6–7; Dkt. # 6 at 4.)  Following the suit, Katona owned 75% of WSG and Oshita owned her original 25%.

In October 2005, Katona assigned half of her interest—37.5%—to Raul's sister, Denise Vernon ("Vernon").  (Dkt. # 3 at 7; Dkt. # 6 at 4.)  In 2007,

Vernon filed a suit against Katona in Texas state court to determine ownership and control of WSG (the "WSG litigation").  (Dkt. # 3 at 7; Dkt. # 6 at 5.)  Raul and Vernon believed that Oshita had withdrawn from her participation in WSG's affairs and was no longer entitled to her 25% membership interest or earnings. (Dkt. # 6 at 5.)

In December 2007, Katona filed a Chapter 13 bankruptcy suit and removed the WSG litigation to bankruptcy court as a separate adversary proceeding.  (Dkt. # 6 at 5.)  In May 2008, the bankruptcy court approved a settlement between Raul, Vernon, and Katona, which allowed Katona to fund her Chapter 13 plan and meet her living expenses until her plan was paid in full. Motion to Compel Compliance with Mediation Agreement, In re Galaz, No. 07-53287-RBK, Dkt. # 431, at 1 (Bankr. W.D. Tex. Jan. 13, 2011).  Specifically, the settlement provided for: (1) a one-time distribution from WSG of $50,000 to Katona; (2) monthly payments from WSG of $4,300 to Katona; (3) a one-time distribution from WSG of $83,000 to Vernon; (4) monthly payments from WSG of $5,000 to Vernon; and (5) an annual salary of $67,500 and back-pay of $221,000 from WSG to Raul.  Order on Application to Approve Settlement, In re Galaz, No. 07-53287-RBK, Dkt. # 75, at 3 (Bankr. W.D. Tex. May 28, 2008).  As part of the settlement, Brian Boydston ("Boydston") was appointed as a Business Manager of WSG.  (Id.)

On September 4, 2008, the bankruptcy court confirmed Katona's Chapter 13 plan.  Order Confirming the Debtor's Plan, In re Galaz, No. 07-53287-RBK, Dkt. # 184 (Bankr. W.D. Tex. Sept. 4, 2008).  Katona was ordered to pay $648 over a term of 60 months.  Id. at 9.  Katona used the monthly payments that she received from WSG to make those payments for several years.  (Dkt. # 6 at 5.)

In February 2011, Katona commenced another adversary proceeding against WSG and Vernon, requesting that the court remove Boydston as WSG's Business Manager, appoint a receiver for WSG, and liquidate WSG ("2011 Adversary Proceeding").  (Id. at 7.)  In November 2011, Katona and Vernon reached a settlement agreement in that action ("2011 Settlement Agreement"), providing that Vernon would purchase Katona's interest in WSG and would release all future legal claims arising out of alleged acts or omissions by Katona. (Id. at 8; Dkt. # 3 at 8.)  The parties dispute whether, as part of the agreement, Katona transferred only her interest in unliquidated claims against third parties, including Oshita, or whether she transferred her interest in all claims, liquidated or unliquidated, against third parties, including Oshita.  (Dkt. # 3 at 8; Dkt. # 6 at 8.) Thereafter, Vernon assigned Alfred, her and Raul's father, all claims against Oshita that she obtained from Katona under the agreement.  (Dkt. # 3 at 8.)

In 2012, Alfred filed suit in California state court to enforce Katona's Unpaid Money Judgment, which Alfred believed he had received through

Vernon's assignment (the "California Foreclosure Action").  (Dkt. # 3 at 9; Dkt. # 6 at 9–10.)  In November 2012, the court foreclosed on Oshita's membership interest in WSG in favor of Alfred to satisfy the judgment.  (Dkt. # 3 at 9.)

As the successor in interest to Oshita, Alfred then filed suit against Katona in Texas state court to recover damages that he believed Katona owed from failing to recognize Oshita's interest in WSG when she made monetary distributions from WSG from 2007 to 2011 (the "Oshita claims").  (Dkt. # 3 at 10.) Katona then removed the action as an adversary proceeding in Katona's Chapter 13 bankruptcy suit.  (Id.)  In response to a motion to remand, the bankruptcy court remanded the matter to state court, but explained from the bench that it could have maintained jurisdiction if the suit was styled as a declaratory judgment action brought by Katona.  (Id.)

Katona then filed the adversary proceeding underlying the present action in bankruptcy court, seeking to enjoin Alfred from pursuing the Oshita claims in state court.  Complaint, In re Galaz, No. 13-05101-rbk, Dkt. # 1 (W.D. Tex. Bankr. Dec. 23, 2013).  In May 2014, Katona filed a Motion for Summary Judgment, which the bankruptcy court granted in July 2014.  Motion for Summary Judgment, In re Galaz, No. 13-05101-rbk, Dkt. # 49 (W.D. Tex. Bankr. May 15, 2014); Order, In re Galaz, No. 13-05101-rbk, Dkt. # 69 (W.D. Tex. Bankr. July 3, 2014).  In granting the Motion, the bankruptcy court declined to resolve whether

5

the Oshita claims were liquidated or unliquidated or whether the Oshita claims were discharged as a part of the final discharge order, instead holding that the terms of the 2011 Settlement Agreement, which were accepted by court order, unequivocally discharged Vernon and Katona's rights to sue one another and that the claim was otherwise judicially estopped.  Transcript, <u>Katona v. Galaz</u>, No. 13-05101-rbk, Dkt. # 86, at 12–14 (Bankr. W.D. Tex. Aug. 15, 2014) [hereinafter "Transcript"].  At the same time, the bankruptcy court denied Alfred's cross-Motion for Summary Judgment.  <u>Id.</u> at 21.  The bankruptcy court's order of final judgment enjoined Alfred from pursuing any cause of action relating to WSG against Katona.  Final Judgment, <u>Katona v. Galaz</u>, No. 13-05101-rbk, Dkt. # 73 (Bankr. W.D. Tex. July 3, 2014).

On July 15, 2014, Alfred and Raul filed a notice of appeal of the bankruptcy court's order.  Defendants' Notice of Appeal, <u>In re Galaz</u>, No. 13-05101-rbk, Dkt. # 79 (W.D. Tex. Bankr. July 15, 2014).  On November 14, 2014, Alfred filed his opening brief.  (Dkt. # 3.)  On December 5, 2014, Katona filed her answering brief.  (Dkt. # 6.)  On January 9, 2015, Alfred filed his reply brief.  (Dkt. # 10.)

DISCUSSION

Alfred identifies six issues for appeal:

(1) Whether the bankruptcy court lacked subject matter jurisdiction when there was no longer a bankruptcy plan to administer;

(2) Whether the bankruptcy court erroneously failed to exercise mandatory abstention;

(3) Whether the bankruptcy court abused its discretion in refusing to exercise permissive abstention;

(4) Whether the bankruptcy court erred in granting summary judgment based on res judicata, compromise and settlement, and accord and satisfaction, when the defenses were never raised in Katona's pleadings or motion and when the theories were without merit;

(5) Whether the bankruptcy court erred in granting summary judgment on the grounds that Alfred's claims were barred by judicial estoppel where Katona did not raise the issue in her motion, Alfred and Oshita did not take inconsistent positions in proceedings, and where Katona is precluded from the defense by the doctrine of unclean hands; and

(6) Whether the bankruptcy court erred in denying Alfred's Motion for Summary Judgment where the Motion clearly established his entitlement to judgment as a matter of law that Katona's claims be dismissed.

(See Dkt. # 3 at 2.)

I.    Subject Matter Jurisdiction and Adjudicative Authority

Alfred challenges both the bankruptcy court's subject matter jurisdiction and its adjudicative authority to issue a final order in the case.  The Court reviews questions of subject matter jurisdiction de novo.  Wagner v. United States, 545 F.3d 298, 300 (5th Cir. 2008).

A.      Subject Matter Jurisdiction

Alfred first argues that the bankruptcy court lacked subject matter jurisdiction over the case for several reasons, including that: (1) there was no bankruptcy estate when the case was commenced because the case was closed in 2012 when Katona paid her creditors in full; (2) the bankruptcy court's reliance on In re National Gypsum Co., 118 F.3d 1056 (5th Cir. 1997) to establish jurisdiction was erroneous; (3) the discharge order did not apply to the Oshita claims, and there is no jurisdiction over parties whose claims were never discharged; (4) the bankruptcy court lacked related-to jurisdiction over the claims; and (5) the bankruptcy court lacked jurisdiction to reopen Katona's case.  (Dkt. # 3 at 15–26.) Katona counters that the Court had "arising under, arising in, and related to" jurisdiction over the claim.  (Dkt. # 6 at 15–30.)

28 U.S.C. § 1334 confers jurisdiction to bankruptcy courts for (1) all cases under title 11 and civil proceedings (2) arising under title 11, (3) arising in cases under title 11, or (4) related to cases under title 11.  28 U.S.C. § 1334(a) & (b); In re U.S. Brass Corp., 301 F.3d 296, 303–04 (5th Cir. 2002).  "The second, third, and fourth categories, all listed in § 1334(b), 'operate conjunctively to define the scope of jurisdiction.  Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy.'"  U.S. Brass Corp., 301 F.3d at 304.

When a bankruptcy plan has been confirmed by the bankruptcy court, the scope of a bankruptcy court's jurisdiction is somewhat circumscribed. Although "[s]ection 1334 does not expressly limit bankruptcy jurisdiction upon plan confirmation," id., the Fifth Circuit adheres to a "more exacting theory of post-confirmation bankruptcy jurisdiction": "After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." In re Craig's Stores of Tex., Inc., 266 F.3d 388, 390 (5th Cir. 2001). Accordingly, although "a bankruptcy court [cannot] lose jurisdiction over pre-confirmation claims based on pre-confirmation activities," "a bankruptcy court may lack jurisdiction over post-confirmation claims based on post-confirmation activities." In re Enron Corp. Secs., 535 F.3d 325, 335 (5th Cir. 2008); Craig's Stores, 266 F.3d at 391. Notwithstanding, it is well established that a bankruptcy court has jurisdiction to interpret and enforce its own prior orders. Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151 (2009).

The instant action is a declaratory judgment action, seeking a declaration from the bankruptcy court that Alfred's state law action is barred. This is not an uncommon procedural posture. See, e.g., In re Nat'l Gypsum, 118 F.3d 1056, 1064 (5th Cir. 1997) (holding "that a declaratory judgment action seeking merely a declaration that collection of an asserted preconfirmation liability is

barred by a bankruptcy court's confirmation of a debtor's reorganization plan (and
the attendant discharge injunctions under sections 524 and 1141 of the Bankruptcy
Code)" arises under title 11); Lycoming Engines v. Superior Air Parts, Inc., No.
3:13-CV-1162-L, 2014 WL 1976757, at * 2–3 (N.D. Tex. May 15, 2014)
(affirming subject matter jurisdiction in closed bankruptcy case because "the relief
requested in the original complaint requires the court to interpret and enforce prior
orders of this court and determine the scope of the bankruptcy discharge"); Weaver
v. Tex. Capital Bank, 410 B.R. 453, 458 (N.D. Tex. 2009) (affirming subject
matter jurisdiction in a declaratory action suit to declare a state court suit as
violative of the order confirming the bankruptcy reorganization plan because the
case "specifically calls into question certain facts and legal implications of the
confirmed reorganization plan").[1]

Katona relies on two main theories to support jurisdiction: (1) that the
Oshita claims were discharged by the bankruptcy court's discharge order, and that
Alfred therefore violated Katona's discharge rights; and (2) that Alfred's state
court claim to ownership over the Oshita claims arises out of a disputed provision
in the 2011 Settlement Agreement, which the bankruptcy court approved and over
which the bankruptcy court explicitly retained jurisdiction.   Complaint, Katona v.

---

[1] The Fifth Circuit has also affirmed a similar holding in the unpublished decision
In re Baker, 593 F. App'x 416, 417 (5th Cir. 2015).

Galaz, No. 13-05101, Dkt. # 1, at 7 (Bankr. W.D. Tex. Dec. 23, 2013); Order on

Stipulation of Dismissal with Prejudice, Galaz v. Worldwide Subsidy Grp., LLC,

No. 11-5015, Dkt. # 100, at 2 (W.D. Tex. Bankr. Nov. 16, 2011) ("[T]he Court

shall retain jurisdiction over this matter to . . . enforce the terms of any settlement

of the parties.").  There is no dispute that the bankruptcy court had jurisdiction

over the bankruptcy proceeding in which it ultimately discharged Katona or the

2011 adversary proceeding which culminated in the 2011 Settlement Agreement.

   The violation of Katona's discharge rights is the most obvious source

of jurisdiction, as it directly implicates the courts "arising under" jurisdiction.

Although "jurisdiction over bankruptcy proceedings [generally] ceases with the

closing of the bankruptcy case," in circumstances where a former debtor seeks to

enforce the bankruptcy court's discharge order, the bankruptcy court retains

jurisdiction over the matter.  In re Bradley, 989 F.2d 802, 804 (5th Cir. 1993).

This is because "[i]f a lender could wait until the conclusion of a bankruptcy

case—and then impose disallowed charges—the debtor's fresh start [which is a

fundamental purpose of bankruptcy law] would not be fresh at all."  In re Padilla,

379 B.R. 643, 652 n.4 (Bankr. S.D. Tex. 2007).

   To the extent it is argued by appellants, the fact that the discharge

issue is disputed is irrelevant in assessing subject matter jurisdiction.  See Bradley,

989 F.2d at 804 (noting that there was a dispute as to whether the debt was in fact

discharged and remanding to the bankruptcy court to make that determination).

This is because jurisdiction is assessed based on the claims at issue, not a court's

ultimate ruling on those claims.  Nor is the Court persuaded that the jurisdictional

question is affected by the fact that the plan was completed and Katona was

granted a discharge as of January 9, 2012.  See Discharge of Debtor After

Completion of Chapter 13 Plan, In re Galaz, No. 07-53287, Dkt. # 479, at 1

(Bankr. W.D. Tex. Jan. 9, 2012).  In circumstances where the discharge itself is the

issue, the action will necessarily "occur after the resolution of the bankrupt's

estate."  Bradley, 989 F.2d at 804; see also In re Franklin, 802 F.2d 324, 326–27

(9th Cir. 1986) (affirming jurisdiction, even though the bankruptcy case had been

dismissed, because the bankruptcy court was construing and effectuating an order

made prior to dismissal); In re Rodriguez, 396 B.R. 436, 454 (Bankr. S.D. Tex.

2008) ("[T]his Court retains subject matter jurisdiction over a closed case to

consider whether a defendant violated the confirmation order.").

   For those reasons, National Gypsum is directly on point.  See 118

F.3d at 1064.  National Gypsum arose out of a declaratory judgment action

alleging that National Gypsum's confirmed reorganization plan and subsequent

discharge barred the Insurance Company of North America's collection efforts,

which were preconfirmation claims that the Company was attempting to enforce in

a series of demand letters.  Id. at 1059–60.  The court held that a declaratory

judgment action seeking a declaration that collection of a preconfirmation liability is barred by a discharge injunction arises under title 11 and therefore confers subject matter jurisdiction on the court.  Id. at 1064.  Here, the underlying state action alleges that Katona controlled WSG's finances and failed to pay out proceeds from WSG in conjunction with Oshita's 25% membership interest beginning in 2007.  Application for Preliminary Injunction, Katona v. Galaz, No. 13-5101, Dkt. # 10-2 at 2–3.)  Given that Katona's plan was not confirmed until 2008, the claim for nonpayment is a preconfirmation claim that, according to Katona, was subject to the 2012 order of discharge.  The order of discharge necessarily implicates the "implementation or execution of the plan."  See Bradley, 989 F.2d at 804.  Accordingly, for the same reasons that the National Gypsum court found arising under jurisdiction, the Court finds that the bankruptcy court had jurisdiction here.[2]

_____

[2] The Court is unpersuaded by Alfred's argument, as it pertains to jurisdiction based on the discharge claim, that National Gypsum's holding is limited in scope and does not confer jurisdiction on this particular declaratory action seeking to enforce a bankruptcy court order.  Compare with In re Superior Air Parts, Inc., 516 B.R. 85, 94 (Bankr. N.D. Tex. 2014) (distinguishing National Gypsum on the basis that it involved a discharge injunction, which is a substantive right under the Bankruptcy Code, whereas the case before the court involved claims that did not arise from the plan or confirmation order but from a termination of a post-confirmation business relationship and an agreement governing that post-confirmation relationship).

        The Court notes that National Gypsum may not have controlled the instant case, had Katona's complaint not included a discharge-based jurisdictional

B.    Adjudicative Authority

Notwithstanding, Alfred also argues that the bankruptcy court lacked the adjudicative authority to enter a final judgment in the case because he specifically refused to consent to the bankruptcy court's exercise of jurisdiction over noncore matters.  (Dkt. # 3 at 25.)  Katona counters that, because the claims either arose under or in the bankruptcy proceeding, the proceeding was a core proceeding in which the bankruptcy court had the authority to issue a final judgment.  (Dkt. # 6 at 31.)

Under 28 U.S.C. § 157, bankruptcy courts only have full judicial power to adjudicate core proceedings arising under or arising in a case under title 11; if a proceeding is noncore, but otherwise related to a case under title 11, the bankruptcy court must submit proposed findings of fact and conclusions of law to the district court, subject to de novo review.  See also In re Wood, 825 F.2d 90, 95 (5th Cir. 1987).

Although § 157 does not explicitly define "core proceeding," § 157(b) provides a non-exhaustive list of matters considered core proceedings.

---

hook and instead relied solely on the bankruptcy court's authority to enforce its order on the 2011 Settlement Agreement.  This is because the 2011 Settlement Agreement concerned WSG, which was Katona's income stream, and the income stream may have lost its relationship to the "implementation or execution of the plan" once the plan was fully paid out.  Nonetheless, since Katona has a separate jurisdictional hook that clearly establishes subject matter jurisdiction, the issue is not relevant to the instant proceeding.

Extrapolating from this list, the Fifth Circuit defines core proceedings as those that "involve[] a right created by the federal bankruptcy law" or that "would arise only in bankruptcy." Wood, 825 F.2d at 97. "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be related to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or non-core proceeding." Id.

Again, National Gypsum resolves the issue here:

> Although a discharge in bankruptcy can constitute an affirmative defense to a state law contract claim, [a debtor's] action to enforce the discharge injunction—and to construe the scope and effect of the confirmed reorganization plan—need not, indeed cannot, resolve any state law contract issues, only whether [a] pre-confirmation claim, as stated, was discharged or otherwise barred by the Bankruptcy Court's confirmation of [the] reorganization plan. As such, the adversary proceeding is a federal cause of action, asserting a statutory right under the Bankruptcy Code.

118 F.3d at 1063–64.

Just like National Gypsum, the instant action, which seeks to enjoin the discharge injunction against Alfred's state law case, asserts a statutory right under the Bankruptcy Code. Accordingly, it is a core proceeding in which the bankruptcy court had the adjudicatory authority to issue a final judgment. See id. at 1064 ("a declaratory judgment action seeking merely a declaration that collection of an asserted preconfirmation liability is barred by a bankruptcy

court's . . . discharge injunction[] . . . is a core proceeding"); <u>Wood</u>, 825 F.2d at 97

(defining core proceeding as those that "involve[] a right created by the federal

bankruptcy law").

II.    <u>Mandatory Abstention</u>

      Alfred next argues that even if there was jurisdiction, the bankruptcy

court erroneously failed to exercise mandatory abstention.  (Dkt. # 3 at 28.)

Katona counters that mandatory abstention does not apply because the action was a

core proceeding and mandatory abstention only applies to "related to" proceedings.

(Dkt. # 6 at 33.)   A district court reviews a bankruptcy court's conclusions of law

de novo.  <u>In re Renaissance Hosp.</u>, 713 F.3d at 293 (citing <u>In re Gerhardt</u>, 348 F.3d

89, 91 (5th Cir. 2003)).

      Mandatory abstention is governed by 28 U.S.C. § 1334(c)(2), which

provides:

> Upon timely motion of a party in a proceeding based upon a State law
> claim or State law cause of action, related to a case under title 11 but
> not arising under title 11 or arising in a case under title 11, with
> respect to which an action could not have been commenced in a court
> of the United States absent jurisdiction under this section, the district
> court shall abstain from hearing such proceeding if an action is
> commenced, and can be timely adjudicated, in a State forum of
> appropriate jurisdiction.

      By its terms, mandatory abstention does not apply to cases arising in

or arising under the Bankruptcy Code, nor does it apply to core proceedings.  <u>See</u>

16

In re TXNB Internal Case, 483 F.3d 292, 300 (5th Cir. 2007) ("We have interpreted this provision to mandate federal court abstention where (1) the claim has no independent basis for federal jurisdiction, other than § 1334(b); (2) the claim is a non-core proceeding, i.e., it is related or in a case under title 11; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court.").  Because the Court has decided that there was arising under jurisdiction in this core proceeding, mandatory abstention is inapplicable, and the bankruptcy court did not err in failing to exercise it.  See also Nat'l Gypsum Co., 118 F.3d at 1061 n.9 (noting that the bankruptcy court found that mandatory abstention did not apply to a declaratory judgment action raising a core matter).

III.   Permissive Abstention

Alfred next argues that the bankruptcy court abused its discretion in failing to exercise permissive abstention, maintaining that all of the permissive abstention factors weigh in favor of abstention.  (Dkt. # 3 at 30.)  Katona counters that the permissive abstention factors weigh in favor of retaining jurisdiction and against abstention.  (Dkt. # 6 at 35.)  The Court reviews the bankruptcy court's decision not to abstain for abuse of discretion.  TXNB Internal Case, 483 F.3d at 299.

28 U.S.C. § 1334(c)(1) grants bankruptcy courts broad discretion to abstain from hearing a case arising under title 11 "in the interest of justice, or in the

interest of comity with State courts or respect for state law."  See also In re Gober, 100 F.3d 1195, 1206 (5th Cir. 1996).  To assess whether permissive abstention is appropriate, courts have developed various factor-based tests, which typically include some combination of the following considerations:

(1)  Effect or lack thereof on the efficient administration of the estate if the court recommends remand or abstention;

(2)  Extent to which state law issues predominate over bankruptcy issues;

(3)  Difficult or unsettled nature of applicable law;

(4)  Presence of related proceeding commenced in state court or other non-bankruptcy proceeding;

(5)  Jurisdictional basis, if any, other than § 1334;

(6)  Degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7)  The substance rather than the form of an asserted core proceeding;

(8)  The feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court;

(9)  The burden of the bankruptcy court's docket;

(10)  The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11)  The existence of a right to a jury trial;

(12)   The presence in the proceeding of non-debtor parties;

(13)   Comity; and

(14)   Possibility of prejudice to other parties in the action.

In re Hous. Reg'l Sports Network, L.P., 514 B.R. 211, 215 (Bankr. S.D. Tex. 2014); see also In re Coho Energy, Inc., 309 B.R. 217, 222 (Bankr. N.D. Tex. 2004) (concluding that abstention was appropriate in light of considerations related to jurisdiction, predominance of state law, non-debtor interested parties, and judicial efficiency).

Nonetheless, the factors are merely a tool "to arrive at the equitable application of the permissive abstention doctrine," and are not dispositive to a court's assessment of the appropriateness of abstention.  Hous. Reg'l Sports Network, 514 B.R. at 217; In re Schlotzsky's, Inc., 351 B.R. 430, 424–37 (Bankr. W.D. Tex. 2006) ("While helpful, [the multi-factor tests] are by their very nature, not dispositive.  Mechanical applications of such tests to rule on equitable issues that are heavily fact-specific are often doomed to produce incorrect outcomes."). "Whether permissive abstention is appropriate in a given case will, of necessity, be driven by equitable considerations germane to that case."  Schlotzsky's, 351 B.R. at 434.

A.    <u>Factors Favoring Retention</u>

The bulk of the factors—Factors 2, 3, 5, 6, 7, 8, 9, and 12—weigh in favor of retention.  Factor 2, the extent to which state law issues predominate over bankruptcy issues, favors retention.  The major issue in Katona's adversary complaint is whether the state court proceeding is barred by the discharge order issued in the case, which is an issue under bankruptcy law.  The other issues in the case concern whether Lisa's claim is liquidated or unliquidated, which requires an interpretation of the terms of the 2011 Settlement Agreement accepted by order of the bankruptcy court, and whether the case is otherwise barred by preclusion, laches, or judicial estoppel.  Because the bars are either based on the bankruptcy case or the 2011 adversary proceeding resulting in the 2011 settlement, federal law determines their applicability.  <u>See</u> <u>In re Southmark Corp.</u>, 163 F.3d 925, 934 (5th Cir. 1999) (setting out elements of estoppel and claim preclusion); <u>In re Eads</u>, 417 B.R. 728, 744 (Bankr. E.D. Tex. 2009) (setting out elements of laches and citing <u>Elvis Presley Enters., Inc. v. Capece</u>, 141 F.3d 188, 205 (5th Cir. 1998)).

Factor 3, the difficulty or unsettled nature of applicable law, also favors retention.  To the extent that bankruptcy law is relevant in assessing whether the discharge order affects the underlying state court action, the bankruptcy court can most efficiently adjudicate the issue.  The other applicable legal principles are well established, as discussed above.

20

Factor 5, the jurisdictional basis, favors retention, since there is federal question jurisdiction over this matter which arises out of § 1334.

Factor 6, the relatedness of the proceeding to the main bankruptcy case, also favors retention. As the Court has discussed several times, one of the major issues in this case concerns the discharge order in the bankruptcy case. Because the discharge question arises under title 11 by virtue of its connection to the original bankruptcy proceeding, the instant adversary proceeding is closely related.

Factor 7, the substance of the complaint, favors retention. This is a core proceeding concerning issues that the bankruptcy court is well-equipped to handle.

Factor 8, the feasibility of severance, also favors retention. The procedural posture of this case has effectively severed the state law issues that Alfred has raised in his state law complaint from the bankruptcy issues that Katona puts forward.

Factor 9, the burden of the bankruptcy court's docket, is also neutral. There is no evidence suggesting that the state court's docket is more or less congested than the bankruptcy court's docket. See Hous. Reg'l Sports Network, 514 B.R. at 217. Given that the case is complicated and has a lengthy history, judicial efficiency supports retaining jurisdiction in this case, despite the Western

District of Texas's large case load.  See Transcript at 4 ("[The case is] a career case to some of the attorneys and to some of the parties.  To me, it's like a television soap opera, Melrose Place or Peyton Place.  You have to be born there to understand what's going on.  And fortunately, or unfortunately, I've lived it for six-and-a-half years.").

Finally, factor 12, presence of non-debtor parties favors retention. Katona is the debtor in her bankruptcy action and the instant suit comes out of that role.

B.    Factors Favoring Abstention

Factor 1, the effect on the efficient administration of the estate, favors abstention.  As the Court has previously discussed, Katona has fully paid out her plan and her debt has been discharged.  The instant litigation will therefore have no effect on the administration of the estate, which ceased to exist at the plan's confirmation.  Craig's Stores, 266 F.3d at 390.  Factor 11, the existence of right to a jury trial, also favors abstention, since Alfred has a right to a jury trial in state court, but the parties do not have a right to a jury trial in bankruptcy court.

C.    Neutral Factors

Factors 4, 10, 13, and 14 are all neutral.  Factor 4, the presence of the related proceeding in state court, is neutral because, although the instant action

relates directly to a pending state court case, the case involves federal issues that

are effectively severed from the state case.

Factor 10, the likelihood of forum shopping, is also neutral.  As the

Western District of Texas has explained:

> <u>All</u> plaintiffs who have a choice of forums in which to bring litigation
> engage in <u>de facto</u> 'forum shopping' as soon as they pick one
> available forum over the other.  All defendants who have the ability to
> do so similarly engage in 'forum shopping' when they remove state
> court litigation to federal court, or when they invoke a particular
> remedy (such as a jury demand) in order to get out of the bankruptcy
> court and into the district court.  In all these situations, however, the
> parties are simply exercising rights afforded them under the law—
> rights which <u>can</u> serve their interest in selecting the forum they deem
> most favorable, but which are no less rights entitled to vindication
> regardless the motivation behind their use.  For forum shopping to
> become a significant factor in the abstention calculus, it must rise to a
> level demonstrating an attempt to abuse or manipulate the judicial
> process.

<u>Schlotzsky's</u>, 351 B.R. at 435–36.

Alfred argues that Katona is engaged in forum shopping because there

is "[n]o logical connection" between the instant action and bankruptcy court and

because she prevailed in a separate bankruptcy suit against Raul.  (Dkt. # 3 at 33.)

However, as the Court has discussed, the instant case is closely related to the

bankruptcy action.  The mere fact that Katona has previously prevailed in

bankruptcy court is insufficient to demonstrate an abuse or manipulation of the

judicial process.  Accordingly, the forum shopping factor is neutral.

Factor 13, comity, is also neutral.  To the extent that state law is implicated, there are no novel issues implicating a state interest.

Factor 14, prejudicial effect, does not have an effect on the analysis. Contrary to Alfred's argument, the instant case is a core proceeding, over which the bankruptcy court has final adjudicative authority.  Because neither abstention or retention would prejudice either party, the factor is neutral.

D.      Equitable Application of Permissive Abstention

Given the significant number of factors in favor of retention, and the minimal weight of the factors favoring abstention, the Court finds that the bankruptcy court did not abuse its discretion in failing to exercise permissive abstention.

IV.   Whether the Bankruptcy Court Erred in its Rulings on Res Judicata, Compromise and Settlement, and Accord and Satisfaction

Alfred next argues that the bankruptcy court clearly erred in finding that the Oshita claims were barred by res judicata, compromise and settlement, and accord and satisfaction because Katona did not raise the defenses in her Amended Complaint or Motion for Summary Judgment and because the defenses fail on the merits.  (Dkt. # 3 at 45.)  Katona argues that the arguments are waived because Alfred failed to present them in his issue statement, as required by Federal Rule of

Bankruptcy Procedure 8006,[3] and that the bankruptcy judge was entitled to decide the case on an unpleaded legal theory when there were no facts in dispute.  (Dkt. # 6 at 41–44.)  A district court reviews a bankruptcy court's findings of fact for clear error.  Fed. R. Bankr. P. 8013; In re Renaissance Hosp. Grand Prairie Inc., 713 F.3d 285, 293 (5th Cir. 2013).  Conclusions of law are reviewed de novo.  Renaissance Hosp., 713 F.3d at 293 (citing In re Gerhardt, 348 F.3d 89, 91 (5th Cir. 2003)).

    A.    <u>Waiver</u>

Bankruptcy Rule 8006 requires an appellant to "file with the bankruptcy clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of issues to be presented."  Fed. R. Bankr. P. 8009(a)(1)(A).  "It is clear under the law of this circuit that an issue that is not designated in the statement of issues in the district court is waived on appeal when the district court rules on the merits, even if the issue was argued before the district court."  In re McClendon, 765 F.3d 501, 506 (5th Cir. 2014) (quoting In re McCombs, 659 F.3d 503, 510 (5th Cir. 2011)).

_____

[3] The Court will refer to Rule 8006 because that was the rule in effect when Alfred filed his statement of issues.  However, the Court notes that the text of Rule 8006 was moved to Rule 8009 as part of the amendments that went into effect on December 1, 2014.  See Fed. R. Bankr. P. 8009 advisory committee's note to 2014 amendment.

Alfred points to the following statement in his issue statement as designating the issue for appeal:

> Whether the Bankruptcy Court erred by rendering judgment in favor of Plaintiff and against Defendant Alfred Galaz where Plaintiff failed to meet her summary judgment burden of establishing the grounds presented in her Motion for Summary Judgment and where Defendants raised a genuine, material issue of fact as to Plaintiff's claims against them.

(Dkt. # 1 at 34–35.)  Alfred maintains that "[w]hether the bankruptcy court could enter summary judgment on grounds not urged by Katona is naturally encompassed in Alfred's statement that Katona did not meet her burden of establishing the grounds that were expressly set forth in her motion."  (Dkt. # 10 at 20.)

The court in McClendon considered a similar argument and found waiver.  There, the court determined that the appellant waived his argument that the bankruptcy court's interpretation of § 523(a)(6) impermissibly shifted the burden of proof to the debtor—an argument about the bankruptcy court's decisionmaking—concluding that it was not encompassed in the issue statement of whether the bankruptcy court erred by finding the debt nondischargeable under § 523(a)(6)—an argument about the merits of the case.  Id. at 506.  The circumstances here are much the same.  The original issue statement concerns the merits of the bankruptcy court's summary judgment motion—Katona's success in

26

meeting her summary judgment burden—while the instant argument concerns the bankruptcy court's decisionmaking—deciding the motion on a legal theory not raised by Katona.  Because the argument is not encompassed within the issue statement, the argument is waived on appeal.

B.    <u>The Merits</u>

Alfred contends that summary judgment on the grounds of res judicata, compromise and settlement, and accord and satisfaction was nevertheless improper because Alfred was bringing his claims as the successor in interest to Oshita, not the successor in interest to Vernon.  (Dkt. # 3 at 37–39.)  Katona counters that the bankruptcy court properly found that the 2011 Settlement Agreement barred the claims because Vernon could not have assigned to Alfred a right she had previously forfeited.  (Dkt. # 6 at 47.)

The Oshita claims arise out of Oshita's ownership interest in WSG, which Alfred obtained by foreclosing on Katona's Unpaid Money Judgment from the California action.  Viewing the facts in the light most favorable to Alfred, the nonmoving party,[4] Alfred inherited the right to foreclose on the Unpaid Money Judgment through rights that were assigned from Vernon.  Vernon inherited those

---

[4] The Court recites the facts in this manner because the bankruptcy court did not decide if the right to the money judgment was a liquidated or unliquidated claim and whether that right was transferred to Vernon as part of the 2011 settlement agreement.

rights from Katona as a result of the 2011 Settlement Agreement.  In the 2011 Settlement Agreement, Vernon specifically released Katona from "any claim" that Vernon or WSG could assert based on any alleged responsibility of Katona running from the beginning of time through the settlement agreement.  Transcript at 13.

Given those facts, there are two questions at issue: (1) did Vernon's release carry over to Alfred when she assigned her rights to the Unpaid Money Judgment; and (2) if so, is the ownership interest a legal substitute for the Unpaid Money Judgment for the purposes of that release, or is the ownership interest legally distinct from the rights that Alfred inherited from Vernon?

1.    Vernon's Release

"An 'assignment' is simply a transfer of some right or interest." Shipley v. Unifund CCR Partners, 331 S.W.3d 27, 28 (Tex. App. 2010).  It is well settled that when a claim is assigned, the assignee "steps into the shoes of the [assignor] and is considered under the law to have suffered the same injury as the assignors and have the same ability to pursue the claims."  Sw. Bell Tel. Co. v. Mktg. on Hold Inc., 308 S.W.3d 909, 916 (Tex. 2010).  However, the assignee is also "subject to all defenses which the opposing party may have been able to assert against his assignor."  Irrigation Ass'n v. First Nat'l Bank of Frisco, 773 S.W.2d 346, 348 (Tex. App. 1989).  Accordingly, when Vernon transferred her interest in

the Unpaid Money Judgment to Alfred, he took that interest subject to the release of liability against Katona.

    2.    <u>Ownership Interest</u>

Nonetheless, that release only bars the instant suit if the ownership interest is a legal substitute for the right to foreclose on the Unpaid Money Judgment, which is the interest that Katona assigned to Vernon and that Vernon assigned to Alfred. Alfred maintains that the two are legally distinguishable, since he is suing on the ownership interest as the assignee of Oshita, not the assignee as Vernon.

The Court looks to the California Code of Civil Procedure, which governed the California foreclosure action in which Alfred foreclosed on the Unpaid Money Judgment. The Code provides that, in enforcing a money judgment against a judgment debtor, "all property of the judgment debtor is subject to enforcement of a money judgment." Cal. Code Civ. P. § 695.010(a); <u>see also</u> § 681.010(a) ("A money judgment is enforceable as provided in Division 2 (commencing with Section 695.010)."). Presumably, this is the authority upon which the state court relied in awarding Alfred Oshita's interest in WSG.[5]

---

[5] The parties have not provided the underlying state court ruling as part of the record.

Given the procedures set forth in the Code for enforcing money judgments, the Court finds that Oshita's ownership interest in WSG was awarded as a legal substitute for the Unpaid Money Judgment.  Because Alfred's state court action against Katona on the Oshita claims is based on an alleged breach of Katona's responsibilities as part-owner of WSG between 2007 and 2011, the state court action is barred by the terms of the release in the 2011 Settlement Agreement.  Accordingly, the Court affirms the bankruptcy judge's holding that the Oshita claims are barred by the terms of the 2011 Settlement Agreement.

V.      Whether the Bankruptcy Court Erred in its Rulings on Judicial Estoppel

Alfred next argues that the bankruptcy court clearly erred in finding that the Oshita claims were barred by judicial estoppel because Katona did not raise the defense in her Amended Complaint or Motion for Summary Judgment and because the defense fails on the merits.  (Dkt. # 3 at 49–51.)  Katona counters that Alfred's first argument is waived for the reasons discussed above and that the bankruptcy court correctly applied judicial estoppel to bar the claim.  (Dkt. # 6 at 44.)  The Court reviews a judicial estoppel determination for abuse of discretion. Love v. Tyson Foods, Inc., 677 F.3d 258, 262 (5th Cir. 2012).

For the same reasons discussed above, the Court agrees with Katona that Alfred has waived his argument that the bankruptcy court did not have the power to decide the judicial estoppel issue without briefing from the parties, since

30

that argument is not encompassed within his statement of issues.  Accordingly, the

Court addresses only the merits of the judicial estoppel ruling.

"The doctrine of judicial estoppel is equitable in nature and can be

invoked by a court to prevent a party from asserting a position in a legal

proceeding that is inconsistent with a position taken in a previous proceeding."  Id.

at 261.  Courts evaluate the following factors in deciding whether to apply judicial

estoppel: "(1) the party against whom judicial estoppel is sought has asserted a

legal position which is plainly inconsistent with a prior position; (2) a court

accepted the prior position; and (3) the party did not act inadvertently."  Id.

(quoting Reed v. City of Arlington, 650 F.3d 571, 574 (5th Cir. 2011) (en banc)).

"However, judicial estoppel is not governed by inflexible prerequisites or an

exhaustive formula for determining its applicability, and numerous considerations

may inform the doctrine's application in specific factual contexts."  Id. at 262

(quoting New Hampshire v. Maine, 532 U.S. 742, 749–50 (2001)).

After taking judicial notice of all of the filings in the bankruptcy case,

the adversary proceedings under that case, the filings and opinions in the appeals

of the bankruptcy case and adversary proceedings, and the opinions in the

California litigation, the bankruptcy court identified several places where Vernon,

as Alfred's predecessor in interest, asserted that Oshita did not own an interest in

WSG.  Transcript at 8–15.  The bankruptcy court held that Alfred, as Vernon's

predecessor in interest, has therefore admitted that Oshita had no interest in WSG, thereby estopping his ability to argue that Katona failed to pay Oshita appropriately on her claims.  Id. at 15.

The Court agrees.  For the reasons discussed above with regard to the 2011 settlement, Oshita's ownership interest is a legal substitute for Katona's original money judgment against Oshita, and therefore Alfred's ownership of that membership derives from Vernon's assignment.  As her assignee, Alfred inherits the positions she has taken throughout the litigation.  See, e.g., In re Bilstat, Inc., 314 B.R. 603, 610 (S.D. Tex. 2004) (applying judicial estoppel where the trustee took a position inconsistent with the positions taken by his predecessor-in-interest).

The Court is unconvinced by Alfred's argument that the bankruptcy court abused its discretion in applying judicial estoppel because Katona came to the instant suit with unclean hands.  (Dkt. # 3 at 42.)  Alfred contends that Katona has taken completely different positions in sworn pleadings and testimony regarding Oshita's interest in WSG, which precludes her from raising the same argument against Vernon.  Although Alfred does not provide any record citations of any such inconsistent statements, the bankruptcy court acknowledged Alfred's argument and found that Katona's statements did not constitute an admission as to Oshita's ownership interest.  Transcript at 8 (reading an excerpt of a filing into the record and summarizing, "So, that's the verified complaint that is alleged by

32

Alfred[] Galaz to be an admission of some sort by [Katona] that Marian Oshita's

interest is 25 percent as of that time").  Based on the record excerpts that the

bankruptcy court read into the record at the hearing on the motion for summary

judgment, the bankruptcy court found:

> Lisa's pleading in the complaint, the original complaint, but not the
> amended complaint, says [Oshita's interest] is in dispute.  [Oshita]
> had a 25 percent interest, which it's clearly undisputed that when
> WSG was – was opened, or – was chartered, that Oshita had a 25
> percent interest in it.  So the question is: At what point in time did
> Oshita have the 25 percent interest?  And at the time the complaint
> was filed in this adversary proceeding, 11-5015, Lisa said it was in
> dispute; that [Oshita] had owned 25%, but that she had not done what
> she was supposed to do, and so it was in dispute.  But, clearly, Denise
> Vernon said Oshita has no interest.

Transcript at 15.  Given that the bankruptcy court's conclusion was not

based on erroneous factual findings, the Court finds that the bankruptcy

court did not abuse its discretion in applying judicial estoppel.

VI.    <u>Whether the Bankruptcy Court Erred in Denying Alfred's Motion for
       Summary Judgment</u>

Finally, Alfred argues that the bankruptcy court erred in denying his

Motion for Summary Judgment because the motion established as a matter of law

that Katona's defenses to the state court action were unfounded.  (Dkt. # 3 at 52.)

The Court would only have the power to entertain Alfred's argument on the denial

of his Motion for Summary Judgment had it reversed the bankruptcy court's

granting of Katona's Motion for Summary Judgment, since denials of motions for

summary judgment are not generally appealable final orders and are only reversible if the reversal of an order granting a cross-motion for summary judgment effectively decided the issue that was previously denied.  See In re Corrugated Container Antitrust Litig., 694 F.2d 1041, 1042 (5th Cir. 1983) (discussing the "extraordinarily limited nature of the 'collateral order' doctrine"); see also Owsley v. San Antonio Indep. Sch. Dist., 187 F.3d 521, 527 (5th Cir. 1999) (reversing partial summary judgment granted to plaintiffs and rendering summary judgment in favor of the defendant on the basis of issues decided during the reversal).  Because the Court has affirmed the bankruptcy court's order granting Katona's Motion for Summary Judgment, the Court will not address Alfred's arguments on his own Motion for Summary Judgment.

CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the bankruptcy court's order.

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, September 21, 2015.

_____
David Alan Ezra
Senior United States Distict Judge